KONENKAMP, Justice.
[¶ 1.] An insured was seriously injured in an automobile accident, suffering damages in excess of $250,000. After receiving $25,000 from the tortfeasor’s liability carrier and $100,000 in underinsured motorist coverage from her primary insurer, she sought an additional $100,000 in underin-sured coverage from her excess carrier. But the excess carrier denied coverage, asserting that an exclusion in the policy *448 precluded coverage. On cross motions for summary judgment, the circuit court declared that the excess carrier’s exclusion was valid and enforceable. Because the policy exclusion is not against public policy, we affirm.
Background
[¶ 2.] Tabitha Pourier was seriously injured in an automobile accident on October 11, 2006, when a vehicle driven by Jamie Yellow Horse struck Pourier’s Plymouth Neon. Pourier incurred medical expenses in excess of $250,000. Yellow Horse was insured through Dairyland Insurance with a $25,000 liability policy limit. Dairyland paid Pourier $25,000. Pourier’s Neon was insured by GEICO through an insurance policy issued to her mother, Susan Pourier. The GEICO policy contained underin-sured motorist coverage at $100,000 per person. After deducting the $25,000 received from Dairyland, GEICO paid Pourier $75,000 in underinsured benefits.
[¶ 3.] At the time of the accident, Pourier was a minor. Her parents were divorced, and she resided with her father, Doug Pourier. Doug owned an insurance policy through De Smet Insurance Company of South Dakota. Pourier was also an insured under the policy. The De Smet policy provided underinsured motorist coverage at $100,000 per person. The parties do not dispute that Pourier suffered at least $250,000 in damages as a result of the accident. Because she had $150,000 left in uncompensated damages, Pourier requested $100,000 in underin-sured motorist coverage from De Smet. De Smet refused to pay, asserting that an exclusion in the policy precluded coverage. That exclusion states, “We do not provide Underinsured Motorist Coverage for ‘bodily injury’ sustained by any person: 1. While ‘occupying,’ or when struck by, any motor vehicle owned by you or any ‘family member’ which is not insured for this coverage under this policy.” This provision is commonly referred to as an “owned-but-not-insured” clause. It is undisputed that Pourier (any person) was occupying a vehicle owned by her (a family member of Doug), which was not insured for underin-sured coverage by De Smet, invoking the exclusion.
[¶ 4.] In September 2007, De Smet brought a declaratory action, asking that the court determine the rights of the parties under the insurance policy. De Smet argued that coverage did not apply because Pourier was driving an owned-but-not-insured vehicle, which was excluded from underinsured coverage by the policy. It also asserted that South Dakota law prohibits Pourier from stacking underin-sured motorist coverages from two separate policies. The parties filed cross motions for summary judgment. The circuit court issued a letter decision, finding that De Smet’s policy exclusion was valid against Pourier, and also that South Dakota law prohibited stacking. The court granted De Smet’s motion for summary judgment. Pourier appeals asserting that De Smet’s policy exclusion is void as against public policy, and South Dakota law allows Pourier’s recovery under De Smet’s underinsured motorist coverage.[1]
Analysis and Decision
[¶ 5.] Pourier asks this Court to declare De Smet’s owned-but-not-insured *449 exclusion void under these facts as against South Dakota’s public policy. She argues that the Legislature’s purpose in requiring underinsured motorist coverage under SDCL 58-11-9.5 is to protect an insured who is injured by an underinsured motorist. In Pourier’s view, it should be immaterial whether she was riding in a vehicle owned by her but insured by another company. She argues that she is not asking that De Smet be the primary insurer, as would be the case if she had no insurance on the vehicle she drove. Instead, she emphasizes that she has at least $150,000 in uncompensated damages and was driving an insured vehicle. She asks this Court to allow a claim for excess — secondary- — coverage. For example, in cases where there is no insurance on the insured’s vehicle, then the exclusion would be valid. But because here Pourier’s vehicle was insured and she has uncompensated damages, De Smet should have to pay as the secondary insurer, consistent with South Dakota law and public policy.
[¶ 6.] De Smet concedes that un-derinsured motorist coverage is generally portable: it follows the insured rather than the vehicle. But De Smet contends that it is not against public policy for an insurance company to exclude coverage in certain situations. See Cimarron Ins. Co. v. Croyle, 479 N.W.2d 881, 886 (S.D.1992), superseded, by statute, SDCL 32-35-70 (insurance companies have statutory right to place conditions on underinsured motorist coverage). De Smet further argues that SDCL 58-11-9.5 contemplates that an insurer will include terms and conditions limiting underinsured motorist coverage, as SDCL 58-11-9.5 starts with, “Subject to the terms and conditions of such under-insured motorist coverage.... ”
[¶ 7.] We have never ruled on the validity of an owned-but-not-insured provision. Many courts from other jurisdictions have, however, and the majority of those courts have found the exclusion valid and enforceable.[2] In the majority of courts, the exclusion is upheld as a way to prevent insureds from purchasing insurance for one car only, and then attempting to apply the underinsured coverage from that insured vehicle to an accident occurring in an uninsured vehicle or from a vehicle insured by a different company. LeMars Mut. Ins. Co. v. Joffer, 574 N.W.2d 303, 309-10 (Iowa 1998); see also Lefler v. Gen. Cas. Co., 260 F.3d 942, 945 (8th Cir.2001) (interpreting Iowa law). One court reasoned that invalidating the exclusion would “permit an owner to buy excess coverage under one policy for one vehicle at a relatively small premium and coverage under a separate policy for his other vehicles at a lesser cost, and have the excess coverage of the first policy apply to the vehicles covered under the subsequent policies.”[3] *450 Powell v. State Farm Mut. Auto. Ins. Co., 86 Md.App. 98, 585 A.2d 286, 291 (Md.Ct.Spec.App.1991). Moreover, “[i]t is scarcely the purpose of any insurer to write a single [underinsured] coverage upon one of a number of vehicles owned by an insured, or by others in the household, and extend the benefits of such coverage gratis upon all other vehicles — any more than it would write liability, collision, or comprehensive coverages upon one such vehicle and indemnify for such losses as to any other vehicle involved.” IDS Prop. Cas. Ins. Co. v. Kalberer, 661 N.E.2d 881, 884-85 (Ind.Ct.App.1996) (quoting John A. Appleman & Jean Appleman, 8C Insurance Law and Practice § 5078.15 at 179 (1981)). Thus, the reasoning is that it is up to insureds to decide which vehicles they want to insure and at what limits: if they want greater protection, then they can pay for it.
[¶ 8.] On the other hand, those courts adopting the minority view have deemed the exclusion void, focusing on the purpose of underinsured motorist coverage. Underinsured motorist coverage is intended to protect injured insureds who are legally entitled to recover damages. Jaimes v. State Farm Mut. Auto. Ins. Co., 53 P.3d 743, 746-47 (Colo.Ct.App.2002); Mikelson v. United Services Auto. Ass’n, 107 Hawai'i 192, 111 P.3d 601, 616-17 (2005) (citing Kau v. State Farm Mut. Auto. Ins. Co., 58 Haw. 49, 564 P.2d 443 (1977)); Beddard v. McDaniel, 183 N.C.App. 476, 645 S.E.2d 153, 153-54 (2007). For these courts, the status of the insured at the time of the accident is immaterial: the coverage follows the person, not the vehicle. In Kau, which involved a similar exclusion for uninsured coverage, the court noted that such exclusion went against the statute mandating coverage. 564 P.2d at 444 n. 1. The court took into account the fact that the insured would have been covered had she been a passenger in a vehicle owned by someone not a member of her household, or been driving a vehicle not her own. Therefore, “[i]t would be anomalous, and certainly inconsistent with the legislative intent, to hold that in those situations the statute would allow recovery but in the present situation it would not.” Id. In Colorado, a court interpreted its underinsured motorist statute language, “for the protection of persons insured,” to mean that the “operative event for coverage under the statute is an injury to an insured arising from an accident involving an at-fault, uninsured or underinsured motor vehicle,” and the status of the insured “is not germane to the insurer’s obligation to provide UM7UIM benefits.” Jaimes, 53 P.3d at 746^17.
[¶ 9.] Here, De Smet’s policy provides that it will “pay compensatory damages which an ‘insured’ is legally entitled to recover from the owner or operator of an ‘underinsured motor vehicle’ because of ‘bodily injury:’ 1. Sustained by an ‘insured;’ and 2. Caused by an accident.” Underin-sured Motorists Coverage, INSURING AGREEMENT A. “Insured” is defined as “You or any ‘family member.’ ” Id. at B. The policy then excludes from coverage “ ‘bodily injury’ sustained by any person: 1. While ‘occupying,’ or when struck by, any motor vehicle owned by you or any ‘family member’ which is not insured for this coverage under this policy.” Id. at EXCLUSIONS A.
[¶ 10.] SDCL 58-11-9.5 provides:
Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated dam *451 ages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.
Here, GEICO provided Pourier $75,000 in underinsured motorist coverage as the primary insurer, after deducting the $25,000 paid by Dairyland, and in accord with SDCL 58-11-9.5.
[¶ 11.] Although we have not examined an owned-but-not-insured provision in relation to SDCL 58-11-9.5, we have upheld an insurance company’s family-member exclusion. Cimarron Ins. Co., 479 N.W.2d at 886. In Cimarron, the insured was riding as a passenger in a vehicle driven by her brother, when her brother collided with a vehicle driven by a third person. The insured passenger sought underinsured motorist benefits from Cimarron for her brother’s negligence. The company denied coverage relying on its exclusion for any vehicle “owned by or furnished or available for the regular use of you or any family member.” Id. at 882-88. On appeal to this Court, the insured argued that Cimarron’s provision was void as against public policy. Cimarron responded that SDCL 58-11-9.5 allows it to place conditions on underinsured motorist coverage. This Court agreed. Id. at 885. It then interpreted the plain meaning of the family-member exclusion, concluding that it excluded the insured’s vehicle from underin-sured motorist benefits and upheld the exclusion.
[¶ 12.] Similar to Cimarron’s argument, De Smet relies on SDCL 58-11-9.5 to assert its right to place terms and conditions on its underinsured motorist coverage. It argues that its owned-but-not-insured limitation is reasonable, hence not against public policy under SDCL 58 — 11— 9.5, in light of the fact that such clause protects insurers from having to “insure against risk of an undesignated but owned vehicle, or a different or more dangerous type of vehicle of which it is unaware, unable to underwrite, and unable to charge a premium therefor.” See Lefler, 260 F.3d at 945. Nothing in SDCL 58-11-9.5 requires an insurer to pay underinsured motorist benefits in every circumstance.[4] Moreover, an insured desiring greater un-derinsured motorist protection from the negligence of underinsured drivers has the option of purchasing additional underin-sured coverage. To mandate that Pourier recover underinsured motorist benefits from De Smet would allow her (or her parent) to increase the underinsured cov *452 erage on a vehicle not insured by De Smet without purchasing additional underin-sured coverage. De Smet’s prohibition of such an arrangement is not against public policy.[5]
[¶ 13.] Affirmed.
[¶ 14.] GILBERTSON, Chief Justice, and ZINTER, Justice, concur.
[¶ 15.] SEVERSON, Justice, and MEIERHENRY, Retired Justice, dissent.

. The material facts are undisputed, and therefore, "our review is limited to determining whether the trial court correctly applied the law.” Kobbeman v. Oleson, 1998 S.D. 20, ¶ 4, 574 N.W.2d 633, 635. "Statutory construction and insurance contract interpretation are questions of law reviewable de novo.” Demaray v. De Smet Farm Mut. Ins. Co., 2011 S.D. 39, ¶ 8, 801 N.W.2d 284, 287 (citing Auto-Owners Ins. Co. v. Hansen Housing, Inc., 2000 S.D. 13, ¶ 10, 604 N.W.2d 504, 509 (citations omitted)).

. Clampit v. State Farm Mut. Auto. Ins. Co., 309 Ark. 107, 828 S.W.2d 593, 597 (1992); Meckert v. Transamerica Ins. Co., 108 Idaho 597, 701 P.2d 217, 220 (1985), superseded by statute on other grounds, Idaho Code Ann. 41-2502(1), as stated in Hill v. Am. Family Mut. Ins. Co, 150 Idaho 619, 249 P.3d 812 (2011); IDS Prop. Cas. Ins. Co. v. Kalberer, 661 N.E.2d 881, 885 (Ind.Ct.App.1996); LeMars Mut. Ins. Co. v. Joffer, 574 N.W.2d 303, 309-10 (Iowa 1998); Powell v. State Farm Mut. Auto. Ins. Co., 86 Md.App. 98, 585 A.2d 286, 290 (Md.Ct.Spec.App.1991); Hall v. Nationwide Mut. Fire Ins. Co., 2005 WL 2100627 (Ohio App.) (unpublished); Estate of Demutis v. Erie Ins. Exch., 851 A.2d 172, 173-74 (Pa.Super.Ct.2004); Nationwide Mut. Ins. Co. v. Viti, 850 A.2d 104, 108-09 (R.I.2004); Deel v. Sweeney, 181 W.Va. 460, 383 S.E.2d 92, 94-95 (1989).

. "The identical problem arises when the same insurance company issues both policies, only here the exposure by the insurance company is slightly different. The insurer receives a premium for two cars, but in an amount only calculated to cover the risk and policy limits for each individual car, not for *450 the combined coverage for two cars on each policy. Consequently, the insured still benefits from a ‘free-ride’ in the form of double coverage for each vehicle at a premium priced on single coverage.” Clampit, 828 S.W.2d at 597.

. Of course, we agree with the dissent that the "subject to the terms and conditions language" does not mean that an insurer has unfettered authority to create restrictions against coverage. Concededly, we have stated that generally, the purpose of UM/UIM coverage is to protect the insured party injured by the negligence of an uninsured/un-derinsured motorist. Gloe v. Iowa Mut. Ins. Co., 2005 S.D. 29, ¶ 17, 694 N.W.2d 238, 245. But the public policy expressed in SDCL 58-11-9.5 is not violated by owned-but-not-insured clauses because the statute contemplates that mandated UIM coverage is limited to the coverage purchased for the insured vehicle. Although the statute requires the insurance companies to provide UIM insurance, it specifically limits coverage "to the underin-sured motorist's coverage limits on the vehicle of the party recovering....” (Emphasis added.) In this case, there were no coverage limits on the vehicle of the party seeking to recover because no coverage of any kind was purchased. Therefore, the language of SDCL 58-11-9.5 itself reflects that owned-but-not-insured clauses do not violate the public policy expressed in the statute.

. Pourier claims that the exclusion is against public policy because she would be entitled to coverage had she been a passenger in a third person’s vehicle or a pedestrian at the time she was injured. In those situations, however, De Smet would be the primary insurer, unlike its secondary insurer status in this case. Nonetheless, we must examine the exclusion within the facts of this case and not consider hypothetical situations where the exclusion might violate public policy. Therefore, if under the facts of this case the exclusion is valid, we will uphold it.